Henry H. Parkin et al., Appellees, v. Damen-Ridge Apartments, Inc., Appellant.

Gen. No. 45,751.

Opinion filed December 3, 1952.
Rehearing denied December 17, 1952. Released for publication December 18, 1952.

CHARLES LEVITON, and JEROME H. LEVITON, of Chicago, for appellant.

JACK I. SPERLING, of Chicago, for appellees.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Defendant appeals from the following: (1) a declaratory judgment entered November 20, 1951; (2) an order entered December 5, 1951, denying its motion to vacate the declaratory judgment; and (3) an order entered December 7, 1951, denying defendant's petition for leave to withdraw $9,781.63 theretofore deposited by plaintiffs with the clerk of the court.

Upon a prior appeal of this cause (344 Ill. App. 301) we reversed an interlocutory injunction restraining the prosecution and threatened prosecution of forcible entry and detainer suits in the municipal court against some of the plaintiffs. We then held that the pleadings were insufficient to justify the injunctional order.

Following the filing of the mandate in the lower court, defendant filed its suggestion of damages. It also filed its petition for leave to withdraw the fund referred to, on deposit with the clerk of the court. It was upon the hearing of the suggestion of damages and said petition, and the complaint and answer, that the court entered the three orders appealed from. No evidence was heard.

Plaintiffs' second amended complaint prayed for a judgment declaring the leases entered into by plain-

tiffs with defendant null and void because they allegedly violate the National Housing Act, as amended, and the regulations thereunder, passed May 22, 1946 (U. S. C. A., Title 12, par. 1743); for the injunction above referred to; an accounting as to the rentals and charges exacted in violation of the Act and regulations; and for an allowance of attorneys' fees in the prosecution of the suit.

The complaint alleged, *inter alia,* that defendant is a Delaware corporation, licensed to do business in Illinois; that the corporation was formed to become eligible for loan insurance under the National Housing Act, as amended, passed May 22, 1946 (U. S. C. A., Title 12, par. 1743), to enable it to construct a housing project for war veterans of World War II, as provided in the National Housing Act; that the Act created the office of Federal Housing Commissioner with specified authority over applications for loan insurance for such projects and to fix, regulate and control the rental charge to be made to veterans, to whom such project was required to be opened; that the Act, and the rules and regulations adopted by the Federal Housing Commissioner, required the applicant, in order to become eligible for such loan insurance, to submit its plans, specifications and cost of intended project construction, whereupon the Commissioner would issue to the applicant his project analysis covering each of the dwelling units, and indicating the maximum rentals that he would approve for such occupancy; that the Act and regulations further provided that the project could not be opened for leasing to veterans nor could leases be made for occupancy until a schedule of rental charges for such occupancy was filed with the Commissioner and approved by him; that during the existence of the obligation of the United States upon such loan insurance, no other charge or change in such rentals could be made by the project owner without first obtaining

the approval of the Commissioner; that the project was opened for occupancy in December 1947, and leases were entered into with each of the plaintiffs, who were war veterans; that defendant did not file with the Commissioner any schedule of the rents to be charged to the plaintiffs, nor was any such schedule approved by the Commissioner up to the time of the filing of the complaint herein, all in violation of the Act and the regulations thereunder; that the leases made with plaintiffs required of them the payment of $25.91 per room per month as rent, and they did deposit as security three months' rent for their dwelling units; that defendant exacted of each of the plaintiffs a $25 charge for investigation as to the desirability of each of them as a tenant; that the requirement of deposit of three months' rent as security and the exaction of the $25 charge was not authorized or approved by the Housing Commissioner and, therefore, was in violation of the Act and regulations; that the amount of rent provided for in the lease as to each of the plaintiffs was in each instance in excess of the amount indicated by the project analysis the Commisssioner would approve as the rental charge for said dwelling units. Attached to the complaint is a copy of defendant's certificate of incorporation.

It appears from the record that defendant obtained a commitment from the Housing Commissioner to insure a loan procured by defendant of approximately 90% of the cost of the project. The estimated cost in its project analysis submitted to the Commissioner was $778,089.

The declaratory judgment recites:

"The Court Doth Declare And Hold:

"(1) That the term rent includes all the matters and things comprehended within the conventional definition of rent, as well as the matters included within the

term rent as used in the Housing Act in question, and that the leases are ineffective insofar as the rents in such matters are concerned;

"(2) That the parties themselves, both plaintiffs and defendant, as Signatories to the leases, had no right, power or authority to bind themselves in the absence of an approval of the rent by the Administrator;

"(3) That, inasmuch as no rent has been actually established and approved in accordance with the Housing Act in question, the Court can, for the purpose of assessing damages, fix and determine a reasonable rental for such purposes only after a hearing upon the question."

██ ██ There is no merit in plaintiffs' contention before us that the foregoing declaratory judgment is not a final judgment and therefore not appealable. We think it fully declares the leases ineffective, which is equivalent to saying they are invalid, and thereby determines and grants the relief prayed for in the complaint. Such a judgment is provided for in section 57½ of the Civil Practice Act (Ill. Rev. Stat. ch. 110 [1951; par. 181.1; Jones Ill. Stats. Ann. 104.057 (1)]). *Altschuler v. Altschuler*, 399 Ill. 559.

██ Whether the declaratory judgment was justified requires an understanding of the intention of Congress in enacting the National Housing Act and a consideration of the several sections of the Act. It is obvious from a reading of the Act and its preamble that it was enacted for the benefit of, and to protect, veterans of World War II, and that defendant, in order to be entitled to federal insurance, insuring the mortgage loan upon defendant's housing project in question, was in duty bound to comply with all of the provisions of the Housing Act and the regulations thereunder.

Paragraph 1738 of subchapter 6, Title 12, U. S. C. A., was inserted as an amendment in paragraph 1830, Title 50, U. S. C. A., and states as follows:

"Section 603 (a) of the National Housing Act, as amended [Sec. 1738 (a) of Title 12] is amended to read as follows:

" '(a) In order to assist in relieving the acute shortage of housing which now exists and to increase the supply of housing accommodations available to veterans of World War II at prices within their reasonable ability to pay, the Commissioner is authorized * * *.' "

Paragraph 1830 of Title 50 provides:

"Section 608 (b) of the National Housing Act, as amended [section 1743 (b) of Title 12] is amended:

"(1) by amending paragraph numbered (2) thereof to read as follows:

" '(2) Preference or priority of opportunity in the occupancy of the mortgaged property for veterans of World War II * * * shall be provided under such regulations and procedures as may be prescribed by the Administrator.' "

Paragraph 1743 of Title 12, subchapter 6 of the U. S. C. A., subparagraphs (b) and (1), provides as follows:

"(b) To be eligibile for insurance under this section a mortgage shall meet the following conditions:

"(1) The mortgaged property shall be held by a mortgagor approved by the Administrator. The Administrator may, in his discretion, require such mortgagor to be regulated or restricted as to rents or sales, charges, capital structure, rate of return, and methods of operation. The Administrator may make such con-

435

tracts with, and acquire for not to exceed $100 stock or interest in any such mortgagor, as the Administrator may deem necessary to render effective such restriction or regulation. Such stock or interest shall be paid for out of the War Housing Insurance Fund, and shall be redeemed by the mortgagor at par upon the termination of all obligations of the Administrator under the insurance.''

Paragraph 1742 of Title 12, subchapter 6 of the U. S. C. A., provides as follows:

''The Administrator is authorized and directed to make such rules and regulations as may be necessary to carry out the provisions of this subchapter. June 27, 1934, c. 847, Title VI, § 607, as added Mar. 28, 1941, c. 31, § 1, 55 Stat. 61.''

Defendant applied to the Commissioner for mortgage insurance. A project analysis required under the Act and regulations was submitted, and a commitment for insurance was issued to defendant. The project analysis referred to estimated an average rental charge per room per month of $19.23. At the time of the insurance commitment there were in force the following rules and regulations issued by the Federal Housing Administrator:

Section 4, paragraph 4, subsection (a):

''(a) A corporation or trust formed or created with the approval of the Commissioner, for the purpose of providing housing for rent or sale, and possessing powers necessary therefor and incidental thereto, which corporation, or trust, until the termination of all obligations of the Commissioner under such insurance, is regulated or restricted by the Commissioner as to rents or sales, charges, capital structures, and methods of operation to such an extent as may be deemed advisable by the Commissioner. Such regulation or restriction shall remain in effect until such

time as the mortgage insurance contract terminates without obligation upon the Commissioner to issue debentures as a result of such termination. So long as such contract of insurance is in effect, the corporation or trust shall engage in no business other than the construction and operation of a Rental Housing project or projects; * * *."

Section 5, paragraph 4, subparagraphs (a) and (b):

"(a) No charges shall be made by the mortgagor for the accommodations offered by the project in excess of a rental schedule to be filed with the Commissioner and approved by him or his duly constituted representative *prior to the opening of the project for rental, which schedule shall be based upon a maximum average rental fixed prior to the insurance of the mortgage, and shall not thereafter be changed except upon application of the mortgagor to, and the written approval of the change by, the Commissioner.*

"(b) The established maximum rental shall be the maximum authorized charge against any tenant for the accommodations offered and shall include all services except telephone, gas, electric, and refrigeration facilities. Charges permitted in addition to such maximum rental shall be subject to the approval of the Commissioner." (Italics ours.)

██ The National Housing Act in question is not to be confused with the Federal Rent Control Act. The two Acts are essentially different. The Rent Control Act would not apply to the project under the National Housing Act until the termination of the insurance liability. The power given the Commissioner under the National Housing Act apparently was to avoid any conflict of jurisdiction between him and the Administrator under the Rent Control Act. The status of the parties in the instant case must be determined by the National Housing Act and the regulations thereunder.

■ The complaint directly charged defendant with failure to submit to the Commissioner for his approval a schedule of rents before the leases were executed and before any occupancy could be permitted, and that the leases in question with the plaintiffs were in violation of the Act. The answer of defendant did not allege that before making the leases in question or allowing any occupancy in the project, it submitted to the Commissioner for approval the required schedule of rents, but it does allege that "there has been submitted to the Federal Housing Administrator and the Administrator or Commissioner thereof, a schedule of rents and charges in conformity with the leases executed by the plaintiffs, upon which he has not yet acted." This latter allegation does not disclose when it submitted said schedule. *Non constat,* it could be after this suit was instituted, since the complaint alleged defendant had not filed such required schedule before the filing of this suit. The facts alleged in the complaint, affecting the validity of the leases in question, stand undenied by the answer of defendant, and the court, in entering its declaratory judgment, was bound by the issues thus made by the complaint and answer.

■ That the Act was primarily intended for the benefit of the veterans is made clear by the plan of operation and restrictions imposed by the Act and the regulations thereunder. In the case of a corporate owner of a project, the articles of incorporation must restrict the business of the corporation to the housing project sanctioned by the Housing Act, and it must not engage in any other business. Its charter must conform to the provisions in the Act and the regulations thereunder. It must transfer to the Housing Commissioner the necessary stock to give the Commissioner the voting power, and by such voting power, when necessary, the Commissioner could, for violation of the regulations or default, remove the officers and di-

438

rectors of such corporation, and thus insure the operation of the project in conformance with the Act and the regulations. This voting power continues until the termination of the mortgage insurance liability of the Government.

■ The project analysis, in accordance with the Act and the regulations thereunder, must disclose in detail, among other things, the estimated cost of the project, including the cost of the land, the amount of the mortgage loan to be insured by the Government, and the estimated rental charge to the veterans per room per month. This, under the Act, must be done before the Commissioner makes any commitment as to the mortgage insurance. When the commitment is made, the owner thereafter is compelled, under the Act and the regulations, before permitting any occupancy, to submit to the Commissioner for his approval a schedule of rents and all other charges for the housing facility, and when approved, there can be no change, except with the approval of the Commissioner. The provision that there can be no change in the maximum rental charge allowed by the Commissioner, or in the facilities furnished to the veteran, is a protection and benefit for the veteran and not the Government. Obviously, if it were otherwise, the more income the owner could secure, the sooner the mortgage indebtedness could be discharged and the insurance liability of the Government terminated.

■ As we view it, the owner knows in advance, before applying to the Commissioner for mortgage insurance, that it must comply with the Act and regulations, and that the power to fix and thereafter control the maximum rental charges or other charges rests solely with the Commissioner. Under such circumstances, the owner, who has not secured such approval from the Commissioner, cannot be heard to say that what he is charging is reasonable and comparable to

the rent charged for similar facilities. The court has no power to fix the rental charge or other charges and declare them reasonable, thus usurping the function and authority granted by law to the Commissioner. The rate-fixing power of a Commerce Commission of a State or Federal government is analogous to the power granted the Commissioner under the Housing Act, insofar as it relates to fixing and regulating the maximum rental charge. As to the power of the Commerce Commission, it has been repeatedly held a court has no right to usurp such function of the Commerce Commission.

 In *Great Northern Ry. v. Merchants Elevator Co.*, 259 U. S. 285, 291, the court said:

''Whenever a rate, rule or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Commission. Sometimes this is required because the function being exercised is in its nature administrative in contradistinction to judicial. * * * To determine what rate, rule or practice shall be deemed reasonable for the future is a legislative or administrative function. To determine whether a shipper has in the past been wronged by the exaction of an unreasonable or discriminatory rate is a judicial function. Preliminary resort to the Commission is required alike in the two classes of cases.''

 In *Illinois Commerce Commission ex rel. Lumaghi Coal Co. v. Chicago & E. I. Ry. Co.*, 332 Ill. 243, 249, the court said:

''The law does not authorize the court to put itself in the place of the commission, try the question anew and substitute its judgment for that of the commission. The court should not usurp legislative or administrative functions by setting aside a legislative or administrative order on its own conception of the wisdom of it.''

 The rule laid down in the cases cited, as applied to the power of a court to review the findings of a Commission, is certainly more applicable to the instant case where the Commissioner had not acted and the matter is pending before the Commissioner.

No case has been cited to us, and our search has failed to disclose any, which passed upon the validity of a lease under the Act in question and regulations thereunder, when such lease is made before any schedule of rents is submitted or approved by the Commissioner and where occupancy in the project is permitted by the owner before such approval.

Factually, *Fox v. Stuyvesant Town, Inc.*, 3 N. J. Super. 408, 66 A. (2d) 47, reviewed by the Appellate Division of New Jersey in [5 N. J. Super. 253] 68 A. (2d) 776, cited by plaintiffs, is different from the instant case. That case involved the validity of an increase in rent after a schedule of rentals had been approved by the Commissioner. The court there, however, regarded the Housing Act and the regulations thereunder as intended to benefit and protect the veteran.

 Defendant earnestly contends that, unlike the Federal Rent Control Act, which provides for remedies by tenants when the landlord violates the Act and thereby affords right of action in the tenants, the National Housing Act in question makes no provision for right of action in the tenant for violation of the Act by the project owner. Because of the absence. of such provisions in the National Housing Act, defendant argues, plaintiffs have no right of action for violation of the statute, relying mainly upon *Brinkmann v. Urban Realty Co.*, 15 N. J. S. 354, 83 A. (2d) 451 (Appellate Division), which construed the statute in question and held no right of action is afforded the tenants for violation of the Act. The Supreme Court of New Jersey in *Brinkmann v. Urban Realty Co.*, 10 N. J.

113, 89 A. (2d) 394, reversed the lower court. Apparently, the decision was not published until after the briefs were filed in the instant case, but counsel for defendant, with commendable candor, cited it upon oral argument. In the *Brinkmann* case, the action was by the tenants for recovery of an overcharge exacted by the project owner. The same contention was there made that the Act afforded no remedy to the tenant. Upon that question the Supreme Court said: (pp. 398–399)

"The duty not to overcharge, imposed by the Administrator's regulations and the certificate of incorporation, was a clear one and the omission of express statutory provision for recovery in the event of overcharge does not to us evidence any purpose that recovery by or on behalf of the tenant, through customary legal and equitable processes and principles, be disabled. See Texas & N. O. R. Co. v. Brotherhood Ry. & S. S. Clerks, 281 U. S. 548, 569, 50 S. Ct. 427, 433, 74 L. Ed. 1034, 1045 (1930) where Chief Justice Hughes pointed out that the absence of statutory penalty was not controlling and that 'many rights are enforced for which no statutory penalties are provided.'

"* * *

"The preclusion of such remedy would, as in the instant matter, operate unconscionably in disregard of the maximum rentals and tend to frustrate effective enforcement of beneficent regulations adopted by the Administrator pursuant to clear Congressional authority and policy. It seems to us that proper regard for the interest of justice requires that such result not be reached in the absence of compelling language indicating statutory purpose of withdrawing from courts their customary powers of moulding and adapting traditional remedies to breaches of new duties imposed

442

by law. See Bowles v. Skaggs, 151 F. 2d 817, 820 (C. C. A. 6, 1945); Heinicke v. Parr, 168 F. 2d 194, 197 (C. C. A. 6, 1948)."

██ We appreciate the dilemma with which defendant is confronted. If the leases made are invalid, and the Federal Rent Control Act does not apply, what remedy can the defendant have, is the question which defendant has posed to this court. He argues that these veterans should not be permitted to continue to occupy the project and defendant unable to collect the rent. Upon oral argument, defendant stated that the Housing Commissioner has not acted upon the schedule of rents submitted. We cannot conceive that defendant is without some remedy in the Federal courts where the Housing Commissioner has failed or refused to act. We are not justified in expressing any opinion as to whether the Housing Commissioner, if he approves the schedule submitted by defendant, can make his approval retroactive as of the date of the leases in question. However burdensome the situation may be for the defendant, it was of its own making, when it failed to comply with the plain provisions of the Act and the regulations thereunder. As was said in *Clyatt v. United States,* 197 U. S. 207:

"Only in the exact administration of the law will justice in the long run be done, and the confidence of the public in such administration be maintained."

██ The chancellor filed a written opinion in this cause, and by the opinion and the declaratory judgment entered, it is clear that the chancellor deemed it necessary, upon the hearing of the suggestion of damages filed by the defendant, to first determine the validity of the instant leases and reserve for further hearing the question as to what would be a reasonable rental in allowing proper damages to defendant. In view of what we have said, the court has no power,

upon such further hearing reserved, to fix the rental charge and determine that it is reasonable. That is the function of the Commissioner. Any damages which the court may allow could not be upon any basis of a rental not fixed by the Commissioner. The deposit made by the plaintiffs with the clerk is in the same category. It was an amount tendered by plaintiffs as rent, which they regarded as the applicable rent, and the court allowed them to deposit it without prejudice to their rights. When defendant, by its petition, sought to withdraw the deposit, which the court denied, it likewise was asking for rent which had not been fixed by the Commissioner or approved by him and therefore unavailing to the defendant.

■■■ We think, under these circumstances, in fairness to the defendant, the chancellor should not permit plaintiffs to withdraw the fund on deposit with the clerk until after the defendant has had a reasonable opportunity to obtain a ruling from the Commissioner upon the schedule of rents submitted to him by the defendant.

■■■ We conclude that the order denying defendant's petition for the withdrawal of the deposit was correct; and that the declaratory judgment, declaring the leases in question invalid, is justified and is affirmed, except that part of the judgment which reserved jurisdiction to hear and determine the reasonable rental charge is erroneous and is reversed, and the cause remanded for further proceedings in conformity with the views herein expressed.

*Affirmed in part and reversed in part and remanded.*
LEWE, P. J. and KILEY, J., concur.