Sidney SARNER, Leonard Sarner, Maurice Sarner, and Linwood Park Inc., Sections 1 to 13 inclusive, each a corporation of New Jersey, Plaintiffs,

v.

Norman P. MASON, Commissioner of the Federal Housing Administration, and Albert M. Cole, Housing and Home Finance Administrator, and Federal Housing Administration, Defendants.

Civ. No. 732-54.

United States District Court
D. New Jersey.

May 6, 1955.

**830**

See also 128 F.Supp. 165.

---

Van Riper & Belmont, Walter D. Van Riper, Newark, N. J., George I. Marcus, Hackensack, N. J., for plaintiffs.

Warren E. Burger, Asst. Atty. Gen., Raymond Del Tufo, Jr., U. S. Atty., Charles H. Hoens, Jr., Newark, N. J., Asst. U. S. Atty., Edward H. Hickey, Carl Eardley, Dept. of Justice, Washington, D. C., for defendants.

MEANEY, District Judge.

The plaintiffs, individuals resident in the State of New Jersey, and corporations organized under the laws of the State of New Jersey, seek to enjoin and restrain the defendants from holding a meeting of preferred stockholders of the plaintiff corporations, from voting the preferred stock of the plaintiff corporations for the purpose of removing the present boards of directors of the plaintiff corporations and electing new

boards, and from interfering with the operations of the present boards of directors. The defendants, on the pleadings, moved to dismiss the proceedings on jurisdictional grounds, and in the alternative moved for summary judgment. It seemed proper to the court that the matter should be considered from the standpoint of the motion for summary judgment and it is with that idea in view that the court will proceed to examine the situation.

The undisputed facts would seem to be that the various corporations, Linwood Park Inc., Sections 1 to 13 inclusive, are corporations each acting under a charter granted under the authority of the laws of the State of New Jersey. The corporations were organized for the purpose of constructing and operating housing projects pursuant to the provisions of Section 608 of the National Housing Act, 12 U.S.C.A. § 1743, and in their certificates of incorporation they have agreed to be bound by the National Housing Act and the rules and regulations of the Federal Housing Administration promulgated thereunder.

The articles of incorporation of each of the plaintiff corporations authorize 300 shares of capital stock, of which 100 shares with a par value of $1 per share shall be designated "preferred stock" and 200 shares shall be designated "common capital stock" of no par value. Under the provisions of the National Housing Act the Federal Housing Administration acquired by purchase all of the preferred stock of each corporation. Ralph J. Solow and Sidney Sarner individually owned 50% of the issued common stock of each corporation, each of them contributing $6,500, so that the total investment in the plaintiff corporations at the time they commenced doing business was $13,000.

The charters of the corporations give the holders of the preferred stock certain rights and privileges, among which is the right to replace existing directors in the event of the creation or existence of certain defaults under the terms of the certificates of incorporation. The language of the articles of incorporation with respect to defaults amounts to a practical repetition of the language of the regulations of the Housing Administration Commissioner.

In the event of a default the holders of preferred stock are entitled to elect new directors. The defaults enumerated in the articles of incorporation are adopted from the regulations issued by the Commissioner of the Federal Housing Administration. The pertinent regulatory provisions, made part of the articles of incorporation, are as follows:

Third: (d) * * * So long as any property of this corporation is encumbered by a mortgage or Deed of Trust insured by the Commissioner it shall engage in no business other than the construction and operation of a Rental Housing Project or Projects.

Fifth: (e) In the event of any default by the corporation as hereinafter defined, and during the period of such default, the holders of the preferred stock, voting as a class, shall be entitled to remove all existing directors of the corporation, and to elect new directors in their stead; Provided, however, that one of said directors shall be the owner or holder of one or more shares of common stock. When such default or defaults shall have been cured, the right to elect directors shall again vest in the holders of the common stock.

Sixth: The corporation shall not without prior approval of the holders of a majority of the shares of preferred stock, given either in writing or by vote at a meeting of the preferred stockholders called for that purpose (a) * * * (b) * * * (c) * * * (d) * * (e) * * * redeem or cancel any of its shares of preferred stock, or effect any changes whatsoever in its capital stock; alter or amend the certificate of incorporation or fail to establish and maintain reserves

as set forth in this certificate of incorporation.

Seventh: (a) The happening of any of the following events shall constitute a default within the meaning of that word as used in this certificate: * * * (4) the failure of the corporation, continuing for a period of fifteen days, to perform any of the covenants, conditions or provisions required by it to be performed by this certificate, the By-laws of the corporation, the Mortgage, or any contract to which the corporation and the Commissioner shall be parties, or fail to carry out in full the terms of any agreement whereby the loan covered by the insured mortgage is to be advanced or the project is to be constructed and operated.

(c) Upon any default by the corporation, the president or the secretary, or either of them, as may be required by law, shall, at the request in writing of the holders of record of a majority of shares of the preferred stock, addressed to him at the office of the corporation hereinabove designated and stating the purpose of the meeting, forthwith call a special meeting to take place within ten days after such call, of the preferred stockholders for the purpose of the removal of existing directors and the election of new directors. If such officers shall fail to issue a call for such meeting within three days after the receipt of such request, then the holders of a majority of the shares of the preferred stock may do so by giving notice as provided by law, or, if not so provided, then by giving ten days' notice of the time, place and object of the meeting by advertisement inserted in any newspaper published in the county or city in which the principal office of the corporation is situated.

Eighth: * * * (f) At the request of the Commissioner, or of the holder of a majority of shares of the preferred stock, his or their agents, employees, or attorneys, the corporation shall give specific answers to questions upon which information is desired from time to time relative to the income, assets, liabilities, contracts, operation and condition of the property and the status of the insured mortgage and any other information with respect to the corporation or its property which may be requested.

In August, 1950 each of the plaintiff corporations purchased the shares of common stock held by Solow for sums aggregating $1,318,425.16. This stock is now carried on the books of the corporations as Investments—Treasury Stock. This purchase was made without prior approval of holders of a majority of the shares of preferred stock, given in writing or by vote at a meeting called for that purpose.

■■■ The defendants urge that such action constituted a default in the contemplation of the provisions of the charters of the corporations. The plaintiffs contend that the purchase was made out of surplus and as such is a transaction authorized by the laws of New Jersey and does not amount to a default. It is well settled in New Jersey that capital stock may be purchased out of surplus, but for the purpose of the present motion—a motion for summary judgment—that is not immediately material. Whether the purchase was made out of surplus or not does not seem to be apparent from the pleadings. The present question is whether the result of such purchase is to effect any change whatsoever in its capital stock. While it is true that the stock is carried on the books of the corporation as an asset, it seems to the court that a definite change in the capital stock set up has been made. These shares so long as they are held in the treasury of the corporation lose the character they possessed when in the hands of individual holders, and even if lawfully bought out of surplus, their purchase constitutes a change in the capital stock. See Borg v. International

Silver Co., 2 Cir., 11 F.2d 147; Wall v. United States, 4 Cir., 164 F.2d 462; Keefe v. Cote, 1 Cir., 213 F.2d 651.

The next matter to be weighed is the question of whether there was a further default in the letter and spirit of the charter, brought about by the situation which developed when the corporations in the year 1951 collectively made long-term unsecured loans in the sum of $1,270,000 to three corporations whose common stock was owned and controlled (and still is) by Sidney Sarner. These corporations, Linwood Park Business Center, Inc., Linwood Park Business Center, Inc., Section 1, and Linwood Park Recreation Center, Inc., were organized for the erection and maintenance of buildings for a shopping and recreation center near the rental housing projects above referred to, but independent of them and of the control of the plaintiff corporations. These unsecured loans were represented by promissory notes payable in twenty to twenty-five years, with interest at 5%. While it is true that there is judicial pronouncement that "there is a distinction between a temporary loan of the surplus funds of a corporation * * * and the practice of lending the moneys of the corporation as if the corporation were a bank", Murray v. Smith, 166 App. Div. 528, 152 N.Y.S. 102, 106, nevertheless the circumstances surrounding this extraordinary transaction clearly partake of the nature of a business transaction and as such it would seem to be within the prohibition of the charter provisions. This court as a consequence finds that the loan definitely constituted a default, made as it was without the antecedent authorization of the holders of the shares of preferred stock.

There remains to be passed upon a third alleged default. Section 8(f) of the articles of incorporation of each of the plaintiff corporations provides as follows:

"At the request of the Commissioner, or of the holder of a majority of shares of the preferred stock, his or their agents, employees, or attorneys, the corporation shall give specific answers to questions upon which information is desired from time to time relative to the income, assets, liabilities, contracts, operation and condition of the property and the status of the insured mortgage *and any other information with respect to the corporation or its property which may be requested.*" (Emphasis supplied.)

On June 17, 1954 the Federal Housing Administration sent questionnaires to the plaintiff corporations requesting certain information, which they refused to answer. Following the general practice pursued by other corporations in similar circumstances, the plaintiff corporations assert that there is no charter provision requiring the furnishing of the information requested in the questionnaire, alleging that all answers to pertinent questions have been furnished to the Authority and that this questionnaire is an unwarranted attempt to secure information which the Authority has no right to demand. Inspection of the quoted provision of the charter makes it quite evident that the Authority has the right to seek any information with respect to the corporation or its property, and the information sought in the questionnaire relates "to the corporation or its property." Refusal to supply the required information constitutes a further default.

Because of these findings the court feels that it must grant the motion of the defendant for summary judgment in its favor, and the relief sought by plaintiffs is denied.

This opinion would seem to be an adequate expression of findings of fact and conclusions of law.

Let an order be submitted in conformity with this opinion.