James CHOY, Herman Rappaport, Jennie Tumberg, Harry Jackman and Paul Jarvis, Plaintiffs,

v.

FARRAGUT GARDENS 1, Inc., Farragut Gardens 2, Inc., Farragut Gardens 3, Inc., Farragut Gardens 4, Inc., Farragut Gardens 5, Inc., and Federal Housing Administration, Alexander P. Hirsch, Henry Hirsch, Louis Benedex and Morris Kavy and Nostrand Realty Corporation, and Martin H. Benedex, Defendants.

United States District Court
S. D. New York.
May 10, 1955.

Joseph A. D'Addario, New York City, for plaintiffs.

Sylvan D. Freeman, Brooklyn, N. Y. for defendants Farragut Gardens 1–5, Inc. and Morris Kavey.

J. Edward Lumbard U. S. Atty., New York City, for defendant Federal Housing Administration, Robert K. Ruskin, New Rochelle, Morton S. Robson, New York City, of counsel.

WEINFELD, District Judge.

This is a class action brought by and on behalf of the tenants of five apartment houses constituting one project known as Vanderveer Estates. In short, their claim is that the project was excessively financed resulting in so-called "windfall" profits to the owners and excessive rentals to the tenants.

The action is brought against the Federal Housing Administration (referred to hereafter as FHA) which issued a mortgage insurance commitment for the project under Title VI, § 608, of the National Housing Act;[1] five corporations, respectively Farragut Gardens 1, 2, 3, 4 and 5, Inc., which constructed and owned the project (referred to hereafter as either the mortgagor or owner);[2] Nostrand Realty Corporation, Inc., which owned the fee to the land upon which the projects were constructed and which was leased to the mortgagor; and individuals who are the stockholders and directors of the five owner corporations and the Nostrand Realty Corporation, Inc.

Title VI of the National Housing Act was enacted for the purpose of alleviating the housing shortage which had existed prior to and had been aggravated by World War II. It was intended to provide rental housing promptly and in volume to meet that emergen-

---

1. 12 U.S.C.A. § 1743.

2. Since a mortgage may not involve an obligation in excess of $5,000,000, 12 U.S. C.A. § 1743(b) (3) (A), each property was separately financed.

cy. The legislation was complementary to other aids intended to meet the overall national housing needs.

Under Title VI of the Act, Congress created the FHA as an agency to assist in achieving the legislative objectives and conferred on a Federal Housing Commissioner (originally called the Administrator) power to insure mortgage loans to be granted by lenders to builders. A mortgage was eligible for insurance where it did not exceed 90% of the amount which the Commissioner "estimates will be the necessary current cost of the completed property or project, including the land".[3] The Act also provided that the Commissioner "may, in his discretion" restrict and regulate the mortgagor with respect to rents, rate of return, and other matters.[4]

The complaint contains four counts. The first alleges that: the defendant Nostrand charged the owner corporations rental fees far in excess of the usual ground rentals for the purpose of increasing the cost of the project, thereby raising the estimated necessary current cost; thereafter and prior to July 31, 1955 the owners, who were then about to construct the five apartment houses on the leased land applied to the FHA for a mortgage insurance commitment and submitted in support of the application architects' plans, schedules, estimates and other documents with the intent that the FHA would use the information therein to make a determination as to (1) the "necessary current cost" of the completed project as required by the Act; (2) the maximum average rentals to be charged prospective tenants; and (3) the rate of return to be allowed the owners from rental income; that thereafter FHA or the Commissioner estimated the "necessary cur-

rent cost" of the project in excess of $21,719,300 and issued mortgage insurance for approximately that amount; the FHA under its regulations and based upon the determination of the "necessary current cost" fixed the maximum rents to be charged prospective tenants and restricted the rate of return to the owners; that as a result of such determination and the issuance of mortgage insurance by the FHA the defendants received from the mortgagees approximately $21,719,300.

The complaint further alleges that the FHA's estimate of the "necessary current cost" and the restrictions based thereon (as to maximum rents and rate of return) were arbitrary, capricious and unreasonable and an abuse of authority in that the FHA (1) had failed to determine either accurately or properly the estimated necessary current costs; (2) had failed to conduct a proper investigation or inspection of the various plans, schedules or other forms submitted to it; and (3) had either grossly over-estimated the necessary current cost or knowingly determined its estimate far in excess of what it knew to be the actual necessary current costs; that by reason of such alleged arbitrary and unreasonable action the determination by the FHA of the necessary current cost exceeded by approximately 33% the actual and ultimate cost.

It is further charged that the actual construction of the project was not in accordance with the plans as originally submitted, resulting in a substantial reduction of the construction cost; that the FHA arbitrarily or capriciously failed during the course of construction or upon completion of the project to require the owners to make progress reports or to account for the funds received from

---

3. 12 U.S.C.A. § 1743(b) (3) (B), which also provides further limitations that the mortgage "shall not in any event exceed the amount which the Commissioner estimates will be the cost of the completed physical improvements on the property or project * * *" and "shall not, in any event, exceed 90 percentum of the Administrator's estimate of the replace-

ment cost of the property or project on the basis of the cost prevailing on December 31, 1947, for properties or projects of comparable quality in the locality where such property or project is to be located."

4. 12 U.S.C.A. § 1743(b) (1).

the mortgagee which, as a result of the changes made in the plans, were far in excess of the actual costs; that at all times the FHA knew the estimated "necessary current cost" exceeded the actual cost and permitted the mortgagor to retain the excess received from the mortgagee without taking any action; that notwithstanding such knowledge the FHA arbitrarily, unreasonably and capriciously, upon completion of the project, failed (1) to re-adjust the maximum rents on the basis of the actual cost in place of the grossly inaccurrate estimated cost; (2) to re-adjust the maximum rate of return to the owners; or (3) to compel the owners to use the difference between the actual cost and the estimated necessary cost for the benefit of the project.

Further, that the plaintiffs in renting their apartments relied upon the regulation of the FHA fixing the maximum average rent as fair and reasonable rental based upon actual cost to the mortgagor.

The second count repeats the allegations of the first, and in addition alleges that the regulations and administrative rules of the FHA were promulgated for the purpose of assisting the tenants and conferring a benefit upon them, and that the maximum average rental established by the FHA was higher than should have been permitted under the National Housing Act by an amount equal to the excess of the actual cost of the projects over the cost as estimated by the FHA.

The third claim reiterates the allegations of the first and second counts and further charges that the various plans, schedules and other documents submitted by the owners and the individual defendants to the FHA for the purpose of enabling the latter to make a determination of the estimated necessary cost of the project and to establish the maximum average rental were false and fraudulent, and this, as well as the fraudulent withholding of information as to changes in construction, led the FHA to fix a maximum average rental higher than the defendant FHA would otherwise have permitted.

The fourth claim realleges all that is set forth in the prior counts and further alleges the individual defendants as directors of the owner corporation voted themselves as dividends the difference between the estimated cost as determined by the FHA and the actual cost of the project.

### Relief Sought

The plaintiffs assert that as tenants they have been injured and adversely effected in that they are compelled to pay rents in excess of what they would have had to pay if the FHA had not acted as charged. Accordingly they seek a decree of this Court that (1) the determinations of the FHA be reviewed and reversed and that it be ordered to re-determine ab initio the estimated "necessary current cost" and the maximum average rents upon the basis of the actual cost of the projects; (2) in making such determination the amount of the ground rentals charged by the defendant Nostrand to the owner corporations be reduced; (3) the owner corporations be ordered to pay over to the FHA any rentals collected in excess of the maximum rents as re-determined and that the FHA then restore and distribute such excess amongst the various tenants in proportionate shares according to the respective rentals previously paid; (4) the individual defendants be required to pay back to the owner corporations the sums they had voted themselves as dividends; and (5) the owner corporations be directed to reduce the mortgages by a sum equal to the difference between the amount of the mortgages and the amount of the actual cost of construction.

Finally, the plaintiffs also ask this Court to set "aside, to the extent inconsistent with the judgment herein, any subsequent order of the defendant FHA permitting any further increase of the maximum average rental to be charged by defendant corporations".

The FHA, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., moves to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted and that the Court lacks jurisdiction over the subject matter. The other defendants moved to dismiss upon the same and additional grounds.

In essence the plaintiffs seek a review and reversal by this Court of the discretionary administrative determinations made by the FHA Commissioner under the authority expressly vested in him by the Congress. What the Court is asked to do is to direct a determination nunc pro tunc of the date of the issuance of the mortgage insurance based upon the final cost figures. Thus a threshold question is whether the Court has jurisdiction to grant such relief.

■■ The power to review the determinations of present necessary cost and of maximum rentals, if it exists at all, must rest upon statutory authority. Plaintiffs rely upon the Administrative Procedure Act, 5 U.S.C.A. §§ 1001, 1009, for such authority. However, the first section cited by the plaintiffs provides that "there shall be excluded from the operation of this chapter * * * the functions conferred by sections * * 1738, 1739, and 1743 of Title 12" and the discretion here sought to be reviewed was exercised by the Commissioner by virtue of the authority granted to him under § 1743. Further, § 1009 of the Administrative Procedure Act, entitled "Judicial review of agency action", likewise specifically excludes from its opera-

tion all agency action "* * * so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion". Nor does the National Housing Act, Title 12 U.S.C.A. § 1702, which authorizes suits by or against the FHA in state or federal Courts permit the maintenance of this suit. The FHA is an administrative unit of government and the authorization of suits against it was simply a waiver of sovereign immunity to make it amenable to process to the same extent that a private corporation would be under like circumstances, but it did not create a cause of action against the government where none existed previously.[5]

■ Finally, there is nothing in Title VI of the National Housing Act, its purpose or history, which suggests that under the circumstances here presented the plaintiffs as tenants of an FHA financed project were given a legal right to have the courts review and supervise the administrative function entrusted by the Congress to the Commissioner's judgment or discretion.[6]

■ But whatever may have been the reason for the great disparity as charged in the complaint between the estimate of "necessary current cost" and the final actual cost, whether due to inefficiency, incompetence, arbitrariness, or other factors which may even involve dereliction of duty, since Congress provided no authority for judicial review of the Commissioner's determination, the court, absent a claim of constitutional right, is without power to grant relief to those claiming to be aggrieved by his

5. Federal Housing Administration, Region No. 4 v. Burr, 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724; Korman v. Federal Housing Administrator, 72 App.D.C. 245, 113 F.2d 743, 746.

6. Cf. Heikkila v. Barber, 345 U.S. 229, 233, 73 S.Ct. 603, 97 L.Ed. 972; Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628; Ludecke v. Watkins, 335 U.S. 160, 172, 68 S.Ct. 1429, 92 L.Ed. 1881; United States v. George S. Bush

& Co., 310 U.S. 371, 380, 60 S.Ct. 944, 84 L.Ed. 1259; State of Louisiana v. McAdoo, 234 U.S. 627, 633, 34 S.Ct. 938, 58 L.Ed. 1506. Cf. Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., which did provide for judicial review of the Price Administrator's authority to fix maximum rents for housing accommodations in defense-rental areas and was upheld in Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892.

**614**

action.[7]  If any conduct subjects the original determination to review or redetermination, such action, if available at all, must be taken by the government itself rather than by individuals who claim to have been effected by such conduct.[8]  Accordingly, there is no basis upon which this suit can be maintained against the FHA and the complaint against it must be dismissed.[9]

■ Since all the relief sought is predicated upon compelling action by or through the defendant FHA, there is no basis upon which to continue the suit as against the remaining defendants, and the complaint must likewise fall as to them.  The complaint indicates no diversity of citizenship and accordingly no purpose would be served in granting plaintiffs leave to plead over.  It is therefore unnecessary to consider whether plaintiffs are in a position to assert a cause of action against the remaining defendants based upon tortious or fraudulent conduct which induced action by the FHA which action in turn had its impact upon, and allegedly damaged, the plaintiffs.[10]

The defendants' motions to dismiss are accordingly granted.

Settle order on notice.

7. Cf. Perkins v. Lukens Steel Co., 310 U.S. 113, 125, 60 S.Ct. 869, 84 L.Ed. 1108.

8. Cf. Sarner (Linwood Park) v. Mason (Housing Administrator), D.C.N.J., 130 F.Supp. 829.

9. It is not without significance that Congress was fully aware that mortgage insurance commitments by the FHA on the basis of "necessary current cost[s]" resulted in liberal financing which in turn yielded what subsequently was referred to as "windfall profits".  "Past experience has shown that 90 percent insured financing on a cost basis, while successful in obtaining production of housing, was also more liberal financing than was justified except under the most extreme emergency conditions."  Accordingly, the Committee proposed a new Title IX of the National Housing Act in place of old Title VI.  Committee on Banking and Currency, H.R. Rep. No. 795, 82nd Cong., 1st Sess., Aug. 20, 1951, United States Code, Congressional and Administrative Service, Vol. 2, p. 1716, 1721, 82nd Cong., 1st Sess., 1951.  See also Conference Report No. 901 [to accompany S. 349], id. at 1759, 1760.  The proposal which attempted to meet this problem was enacted into law and is now found in Section 1715r of Title 12.

10. Fieger v. Glen Oaks Village, 285 App. Div. 814, 136 N.Y.S.2d 539, has, upon similar facts, held that plaintiffs cannot under the doctrine of Lawrence v. Fox, 20 N.Y. 268, maintain their action.  However, "The assault upon the citadel of privity is proceeding in these days apace * * *.  In the field of the law of contract there has been a gradual widening of the doctrine of Lawrence v. Fox, 20 N.Y. 268, until today the beneficiary of a promise, clearly designated as such, is seldom left without a remedy".  Ultramares Corp. v. Touche, Niven & Co., 255 N.Y. 170, 180, 174 N.E. 441, 445, 74 A.L.R. 1139; McClare v. Massachusetts Bonding & Insurance, 266 N.Y. 371, 379, 195 N.E. 15; State Street Trust Co. v. Ernst, 278 N.Y. 104, 15 N.E.2d 416, 120 A.L.R. 1250.  See Brinkmann v. Urban Realty Co., 10 N.J. 113, 89 A.2d 394; Parkin v. Damen-Ridge Apartments, 348 Ill.App. 428, 109 N.E.2d 363; dissenting opinion of Beldock, J., in Fieger v. Glen Oaks Village, supra, and comment of majority that it was not determining whether plaintiffs may be able to plead a cause of action for the same relief.  And see also, Thomas v. Winchester, 6 N.Y. 397; MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696; Pond v. New Rochelle Water Co., 183 N.Y. 330, 76 N.E. 211, 1 L.R.A.,N.S., 958.