Bertram A. DRUKER et al., Plaintiffs,

v.

Thomas A. SULLIVAN et al., Defendants,

and

James M. Kelly et al., Intervening Defendants.

Civ. A. No. 71–45.

United States District Court,
D. Massachusetts.

March 2, 1971.

Roche, Carens & DeGiacomo, Robert J. Sherer, Boston, Mass., for plaintiffs.

John M. Hyson, City of Boston Law Dept., Boston, Mass., for defendants.

Michael L. Altman, Boston Legal Assistance Project, Dorchester, Mass., L. Scott Harshbarger, Lawyer's Committee for Civil Rights, S. Stephen Rosenfeld, Boston, Mass., for intervenors.

1. After the hearing on the application for a preliminary injunction, a group of tenants residing at Castle Square moved to intervene as defendants. Their motion was granted, and the intervening defendants were given an opportunity to file a

## MEMORANDUM OF DECISION ON PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION

JULIAN, District Judge.

Plaintiffs are the owners and operators of a 500-unit multiple dwelling housing project within the City of Boston. This project, known as "Castle Square," was financed and developed under Section 221(d) (3) of the National Housing Act. 12 U.S.C. § 1715*l*(d) (3). Defendants constitute the Rent Board of the City of Boston, which was created by Section 2 of Chapter 11 of the Ordinances of 1970 of the City of Boston. The Rent Board is the agency charged with enforcing the provisions of Chapter 11 of the Ordinances of 1970. The City of Boston is also joined as a defendant. Plaintiffs seek a declaratory judgment holding that Chapter 11 of the Ordinances of 1970 of the City of Boston is invalid as applied to the Castle Square development on the ground that the rent control provisions of the Ordinances are in conflict with the National Housing Act. The case is before the Court on plaintiffs' application for a preliminary injunction to enjoin defendants from taking any action to enforce the provisions of Chapter 11 of the Ordinances of 1970 pending the final determination of this action on the merits. A hearing was held on the application on January 12, 1971, and both parties were given an ample opportunity to be heard and to present evidence.[1]

For the reasons stated below, the application for a preliminary injunction is denied.

## I. *City of Boston Rent Control Ordinance*

Pursuant to the enabling act of the Commonwealth of Massachusetts, Chapter 863 of the Acts of 1970, the Boston

memorandum and supporting affidavits in opposition to plaintiffs' application for a preliminary injunction. Subsequently, intervening defendants filed a memorandum of law in opposition to the application.

City Council enacted a rent control ordinance, Chapter 11 of the Ordinances of 1970, entitled "An Ordinance Regulating Certain Residential Rents and Evictions." This ordinance conferred upon the "Rent Board" power to adjust the maximum rent that may be charged for "housing accommodations." Ordinances, 1970, Ch. 11, § 2(c). "Housing accommodation" is defined as "any building or structure, permanent or temporary, located within the city, or any part or portion thereof, occupied or intended for occupancy by one or more individuals as a residence, not including the following:

"(i) housing accommodations which the United States or the Commonwealth of Massachusetts or any authority created under the laws thereof either owns, or operates, or regulates the individual rents thereof, other than housing accommodations regulated under the provisions of Chapter 10 of the Ordinances of 1969 or of this ordinance, or finances or subsidizes; except federally subsidized buildings under the 207, 220, 221(d)(3) and 236 programs." Ordinances, 1970, Ch. 11, § 1(e).

It is not disputed that the Rent Board has construed this section to mean that Section 221(d)(3) housing, which includes the Castle Square development, is subject to the rent control provisions of the ordinance and that the Rent Board is taking steps to enforce the ordinance against that development. For the purposes of this opinion then, this Court will assume that 221(d)(3) housing is subject to the ordinance.

This Boston ordinance does not automatically "roll back" rent levels to an amount in effect at some previous time; rather it allows a landlord to charge the rent he chooses if 1) he gives notice of a proposed increase to the tenants and the Board in accordance with Section 4(a) of Chapter 11, and 2) if the Board does not disapprove the increase within 45 days of the notice. Ordinances, 1970,

Ch. 11, § 4(a). Tenants have the right to oppose proposed increases by registering a complaint with the Board within 14 days of the receipt of the notice of increase. Ordinances, 1970, Ch. 11, § 4(a). In making adjustments of rent levels, the Rent Board is required to observe "the principle of maintaining rents for housing accommodations at levels which will yield to the landlords a fair net operating income from such housing accommodations." Ordinances, 1970, Ch. 11, § 4(b).

If a landlord, after the effective date of the ordinances, December 28, 1970, does not give proper notice of a proposed increase in accordance with Section 4(a), the rent increase is not effective. Ordinances, 1970, Ch. 11, § 4(a).

## II. *Federal Statutory Scheme*

Castle Square is a 500-unit development of low and middle income housing which is subject to a mortgage which is insured by the United States Government under the provisions of Section 221 of the National Housing Act, 12 U. S.C. § 1715*l*.[2] The Secretary of Housing and Urban Development is granted authority to approve mortgages and to supervise their operations "under a regulatory agreement or otherwise, as to rents, charges, and methods of operation, in such form and in such manner as in the opinion of the Secretary will effectuate the purposes of this section." 12 U.S.C. § 1715*l*(d)(3).

On March 14, 1968, plaintiffs, doing business as Castle Square Associates, entered into a regulatory agreement with the Federal Housing Commissioner, who acts as agent for the Secretary of HUD. Paragraph 4(b) of the agreement provides that plaintiffs are to "make dwelling accommodations and services of the project available to occupants at charges not exceeding those established in accordance with a schedule approved in writing by the Commissioner." Paragraph 4(d) of the agreement provides

2. For a more extensive analysis of the provisions of this section, see Hahn v. Gottlieb, 1970, 1 Cir., 430 F.2d 1243, at 1245–1246.

that the Commissioner will entertain requests for rent increases and will

"(1) Approve a rental schedule that is necessary to compensate for any net increase, occurring since the last approved rental schedule, in taxes (other than income taxes) and operating and maintenance expenses over which owners have no effective control, or

"(2) Deny the increase stating the reasons therefor."

In May, 1969, plaintiffs applied for such a rent increase, and on December 19, 1969, the Federal Housing Administration authorized a monthly increase of $22 per apartment. Plaintiffs were authorized to increase the rent $11 per apartment effective February 1, 1970, and another $11 per month effective February 1, 1971. Only the second $11 increase is presently at issue.

### III. *Probability of Prevailing on the Merits*

In plaintiffs' complaint it is alleged that plaintiffs gave notice of the increase to take effect February 1, 1971, in "December of 1970, shortly before the enactment of Chapter 11 of the Ordinances of 1970 * * *."[3] Plaintiffs allege further that on January 4, 1971, the Rent Board informed plaintiffs that the rent increase to take effect February 1, 1971, was ineffective, and that the Board would advise Castle Square tenants not to pay it, because it was not in compliance with the new Boston rent control ordinance.

Plaintiffs contend that the United States has pre-empted the power of the City of Boston to regulate the rents in a Section 221(d) (3) development, and that therefore Chapter 11 of the Ordinances of 1970, in purporting to confer upon the Rent Board power to impose upon plaintiffs a rental schedule different from that approved by the Federal Housing Commissioner under the provisions of paragraph 4(b) of the regulatory agreement, is invalid as a violation of Section 2 of Article VI (the supremacy clause) of the Constitution of the United States.

In fact, however, the Court finds that plaintiffs have not shown that the two laws are in conflict with each other. In Florida Lime and Avocado Growers v. Paul, 1963, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248, the Supreme Court noted that "[t]he test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field * * *.

"The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject permits no other conclusion or that the Congress has unmistakably so ordained. See, e. g., Huron Portland Cement Co. v. Detroit, [362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852] *supra*." (At 142, 83 S.Ct. at 1217.)

The federal law and the Boston Ordinance do not necessarily clash, at least in this case; it is quite possible that both may be enforced without impairing federal superintendence of the field. Section 221(d) (3) of the National Housing Act gives the Secretary of HUD the authority to approve mortgagors and to supervise their operations "under a regulatory agreement or otherwise, as to rents, charges, and methods of operation * * *." 12 U.S.C. § 1715*l*(d) (3). However, in the regulatory agreement entered into by plaintiffs and the Secretary's agent, the Federal Housing Administration Commissioner, it is agreed that Castle Square will "make dwelling accommodations and services of the

---

3. At the hearing, plaintiffs' attorney stated that notice of the increase was given on December 28, 1970, which was the effective date of Chapter 11 of the Ordinances of 1970. No evidence was offered on this issue, and this Court makes no finding as to when notice was actually given.

project available to occupants at charges *not exceeding* those established with a schedule approved by the Commissioner." (Emphasis added.) Thus the regulatory agreement places a ceiling on the rents that the plaintiffs may charge. It does not purport to fix the rents at the maximum established by the agreement. It merely obligates plaintiffs not to charge rents *in excess* of the maximum approved by the Commissioner. There appears to be no necessary conflict with the Boston Ordinance, even if the Boston Rent Board were to establish a rent below the maximum permitted but not required by the regulatory agreement.

 Plaintiffs contend, however, that the FHA by allowing the increase of $11 per month per apartment has determined that the increase is necessary to enable Castle Square to continue to meet its debt service obligations to the FHA. They argue that although the federal and local laws do not necessarily collide, nevertheless the local law should be declared invalid or inapplicable because the federal policy may be frustrated if the Rent Board establishes the rent so low that Castle Square would default on its FHA obligations.

This Court is not persuaded by that argument. The Boston Ordinance provides a procedure by which plaintiffs may seek an increase or have their proposed increase approved. The Boston Ordinance imposes upon the Rent Board the obligation to insure to landlords "a fair net operating income" when the Board establishes a maximum rental level. Ordinances, 1970, Ch. 11, § 4(b). If the plaintiffs utilize the Rent Board procedure for establishing an increase, it appears highly probable that the Rent Board's "fair net operating income" standard would require the Board to set a rent level at least high enough to enable plaintiffs to meet their FHA obligations and have a fair net operating income in addition. In the absence of a showing that the federal and local laws are in direct conflict, and in view of the likelihood that action by the Boston Rent Board will not interfere with federal policy, plaintiffs should exhaust their remedies before the Rent Board before they seek to have this Court intervene. See Stoneridge Apts., Company v. Lindsay, 1969, S.D.N.Y., 303 F.Supp. 677.

The Court concludes, on the present state of the record, that the plaintiffs have not established a reasonable probability that they will ultimately prevail on the merits.

### IV. *Irreparable Damage*

 In addition, this Court finds that there has been no showing of irreparable harm to plaintiffs. The rent level which the Rent Board may determine to be appropriate to yield a "fair net operating income" for Castle Square may be identical to the FHA determination, and thus it may well result in no damage whatever to the plaintiffs. On the evidence presently before the Court, it is wholly speculative whether any damage will result to plaintiffs if no injunction is issued. On the present state of the record, the probability is that no irreparable damage will ensue to the plaintiffs if no injunction is issued. The Court did not find the testimony of Irving Solomon (Director of the Housing Services and Property Management Division of HUD) persuasive on the issue of damage.

Plaintiffs further submit that they will be subjected to the potential penalties of treble damage suits, Ordinances, 1970, Ch. 11, § 9(a), and criminal prosecution, Ordinances, 1970, Ch. 11, § 10, if they fail to comply with the Boston Ordinance. The answer to this contention is that plaintiffs may avoid such sanctions merely by complying with the provisions of the Ordinance and exhausting their remedies there before the merits of this action are finally determined. Should it ultimately be determined that Castle Square tenants must pay the increase and they should owe back rent as a consequence, plaintiffs have a remedy under state law. Mass.G.L. c. 186, § 7. This Court does not accept, in the absence of persuasive evidence, plaintiffs' unsupported assertion that Castle Square

tenants will not pay their back rent if found due.

### V. *Conclusion*

On the present state of the record, the Court finds 1) that no conflict presently exists in this case between the ordinance and the federal statute; 2) that no conflict may ever exist if the plaintiffs pursue their remedies before the Rent Board; and 3) that plaintiffs have not shown that irreparable damage will come to them in the absence of a preliminary injunction.

For the reasons stated, plaintiffs' application for a preliminary injunction is denied.