Aldo A. Nastasi, J.
In this summary proceeding for nonpayment of rent, the court has been called upon to resolve an apparent conflict between the rentals permitted under the Emergency Tenant Protection Act of 1974 (L. 1974, ch 576) and those allowable under the rules and regulations promulgated by the United States Department of Housing and Urban Development (HUD). The court has previously rendered its decision in the matter, and at that time indicated that a written memorandum would follow.
The apartment in question is located in a development which was constructed under section 608 of the National Housing Act (U. S. Code, tit 12, § 1743). As such, the Federal Housing Administration was the insurer of the mortgage on the development, but in no other way subsidized its construction or maintenance. The FHA, and now HUD, was given the power to regulate the maximum permissible rents that the owner of a project financed by an FHA insured mortgage may charge.
On April 11, 1974, petitioner landlord and respondent tenant entered into a lease agreement for a term beginning on May 1, 1974, which lease called for a monthly rental of $170. Attached to the lease and signed by the respondent was a rider which contained the following paragraph: "The Landlord and the Tenant agree that the rent reserved in the lease is the rent presently permitted by the F.H.A.; and when and if an increase is authorized and permitted by the F.H.A., the Tenant agrees that the decision of the said F.H.A. shall be binding upon the Tenant, and the Tenant agrees to abide by said decision, and pay such increase in rent to commence the month following the date the increase shall be granted; and the Tenant agrees to continue to pay such increase thereafter until the termination of the lease, and the rental provided herein shall be deemed increased by that amount.”
On May 2, 1974, HUD authorized an increase in the schedule of rents to the development involved herein. Pursuant to that schedule, the rent for respondent’s apartment was in *480 creased $25 to $195, with said increase taking effect on June 1, 1974 in accordance with the rider provision set forth above. The petitioner deferred collection of the increased rental until July 1, 1974 but from that date through January, 1975, the respondent did tender and petitioner did accept the sum of $195 per month. In February, 1975, respondent tendered the original rental of $170 claiming that any increase above that amount was in violation of the Emergency Tenant Protection Act (ETPA). Petitioner then instituted this summary proceeding for the nonpayment of rent, in which respondent interposed a counterclaim for the overpayment of rent from July 1, 1974 through January, 1975.
Two issues confront the court: is the amount of rent the landlord can charge herein governed by the provisions of the ETPA, and if so, what amount of rent does that statute permit.
Pursuant to section 3 of the ETPA, the City Council of the City of Yonkers on June 28, 1974, declared a determination of emergency. That declaration invoked the provisions of the ETPA as of July 1, 1974, which date is designated by the statute as the "local effective date.”
Petitioner argues that the subject premises are exempt from ETPA control by virtue of section 5 (subd a, par [3]) of the statute and subdivision (c) of section 9 of the regulations promulgated thereunder (9 NYCRR 2500.9 [c]) which, in identical language, exempt from regulation "housing accommodations in buildings in which rentals are fixed by or subject to the supervision of the State Division of Housing and Community Renewal under other provisions of law or the New York State urban development corporation, or, to the extent that regulation under this act is inconsistent therewith aided by government insurance under any provision of the National Housing Act” (emphasis supplied).
A reading of this statute clearly reveals that its intent was not to automatically exempt government insured housing, but rather that it contemplated a further inquiry into possible conflict between various regulatory schemes.
That inquiry is aided, in large measure, by the opinion of Judge Lasker in Stoneridge Apts. Co. v Lindsay (303 F Supp 677 [SONY, 1969]). Stoneridge involved an attack on the constitutionality of the New York City Rent Stabilization Law of 1969 by the owner of a multiple dwelling which was also subject to a mortgage insured under the National Housing *481 Act. In language identical in substance to that involved herein, the Rent Stabilization Law exempted from its operation multiple dwellings "aided by government insurance under any provision of the National Housing Act, to the extent this local law or any regulation or order issued thereunder is inconsistent therewith” (Administrative Code of City of New York, § YY51-3.0, subd a, par [1], cl [c]).
In upholding the constitutionality of the statute under the Supremacy Clause of the United States Constitution (art VI, §2) Judge Lasker reasoned that no conflict could exist between the Rent Stabilization Law of 1969 and any Federal legislation relating to rent control, since on that subject there was none. The only relevant Federal legislation is the National Housing Act, the subject matter of which is unrelated to rent control (see Choy v Farragut Gardens, 131 F Supp 609 [SDNY, 1955]). Other Federal jurisdictions have also found no conflict between local rent control laws and the National Housing Act (Helmsley v Borough of Fort Lee, 362 F Supp 581, 591 [D NJ, 1973]; Druker v Sullivan, 322 F Supp 1126, 1130 [D Mass, 1971], and Stoneridge has been followed and cited in New York in Matter of Pelham Towers v Conciliation & Apps. Bd., 71 Misc 2d 814).
The Department of Housing and Urban Development has itself indicated that under the circumstances presented herein, it will not intrude upon local regulatory effects. In a new interim rule promulgated in 40 Fed. Reg. 8189, 8190 the department stated, in section 403.2 thereof, that it "will generally not interfere in the regulation by local rent control boards of rents of unsubsidized projects with mortgages insured or held by HUD. However, HUD will assert exclusive jurisdiction over the regulation of the rents of such a project when the delay or decision of a local rent control authority jeopardizes the Department’s economic interest in the project.” The rule goes on to delineate the procedures a mortgagor must follow to raise the issue of economic jeopardy before the department, and in a separate subpart, states that the department will assert exclusive jurisdiction over the projects which, in addition to having Federally insured mortgages, also receive a subsidy pursuant to various sections of the National Housing Act. As already noted, the premises herein receive no such subsidy, and moreover there has been no proof that the petitioner has invoked the procedures by which the department might assert exclusive jurisdiction would be conclusive *482 and not itself subject to legal challenge; however, that issue need not be reached here.
Based upon the prevailing case law and with the support of the policy of HUD itself, the court concludes there is no present conflict between the ETPA and the National Housing Act, and that it is to the regulatory scheme of the ETPA that it must look to determine the permissible rent herein.
Subdivision a of section 6 of the ETPA provides inter alia that notwithstanding the provisions of any lease or other rental agreement, a landlord cannot charge or collect, on or after the local effective date — here, July 1, 1974 — any rent in excess of the initial legal regulated rent, or, under circumstances not applicable hereto, the adjusted initial legal regulated rent. Under paragraph (2) of subdivision b of section 6 of the act, and subdivision (b) of section 21 of the regulations (9 NYCRR 2501.1 [b]) the initial legal regulated rent is the rent reserved in the last effective lease. (The statute in subdivision b of section 6 does provide for initial adjustments of rent in those leases which became effective after January 1, 1974, but no such adjustment was applied for herein.) The last effective lease, then, was the one here in issue and that provided for a rental of $170, plus any FHA authorized increase. That increase became effective on June 1, 1974, and, notwithstanding the fact that the landlord chose not to collect it for one month, the basic rent of $170, plus the $25 increase, the sum of $195, became the initial legal regulated rent within the meaning of the ETPA, and is thus the rental that the petitioner was authorized to collect during the period in question.
Accordingly, the court hereby awards judgment to petitioner in the amount of $195 (plus attorney’s fees in the amount of $75), and hereby dismisses respondent’s counterclaim.
Submit judgment.