OPINION OF THE COURT
Lorraine S. Miller, J.
Petitioner has brought on the instant motion by way of an order to show cause to enforce a stipulation of settlement entered into between the petitioner and the respondent, New York City Housing Authority (herein the Authority).
Petitioner had initially commenced a holdover proceeding against the Authority as the lessee of 12 apartments at 611 Banner Avenue based upon the expiration of a section 23 lease (US Code, tit 42, § 1421b). After negotiations, the *844 parties drew up a stipulation, so ordered by this court, providing for the section 23 tenancies to be converted to section 8 tenancies (US Code, tit 42, § 1437f) commencing October 1, 1979 with monthly rentals being “the maximum ceiling allowed by Section 8.” Petitioner’s holdover proceeding and the Authority’s motion to dismiss were withdrawn.
In controversy here is the meaning of the term, “the maximum ceiling allowed by Section 8.” Petitioner contends it should receive as the contract rent the “Fair Market Rent” for the apartments. (24 CFR 882.102.) According to the guidelines for the time period covered by the stipulation, the maximum fair market monthly rental for a nonelevator building in New York City was $268 for a one-bedroom apartment and $316 for a two-bedroom apartment.
The respondent Authority contends that since the building is “rent stabilized”, the maximum petitioner can obtain is the September, 1979 rent stabilized amount, plus an 8%% increase for the year 1980, to wit: $253.89 for one bedroom and $300.15 for two bedrooms.
Following oral argument on the order to show cause and the submission of proposed orders, this court finds that the maximum ceiling allowed under section 8 is the rent-stabilized figure set forth by the Authority in its proposed counterorder.
Section 23 tenancies (wherein the owner of the premises and the New York City Housing Authority enter into a leasehold agreement and eligible families become sublessees of the Authority) are in the process of being phased out by the Federal Government and the Authority has been encouraged to arrange for an orderly transition of these tenancies to “Section 8” tenancies. (See, e.g., 24 CFR 882.101 [a] [2].)
Under the “Section 8 Program” (US Code, tit 42, § 1437 f) an owner of residential premises enters into a direct leasehold agreement with eligible low-income tenants and a housing assistance payments contract with the New York City Housing Authority to subsidize the tenants’ rental payments. Each section 8 family pays one quarter of its adjusted income for rent and the remainder is paid by money *845 from the United States Department of Housing and Urban Development (HUD) administered through the New York City Housing Authority.. (See 24 CFR 882.105.)
Rentals which an owner seeks upon conversion of a section 23 tenancy to section 8 are subject to a “ [r] ent [r] easonableness” limitation (see 24 CFR 882.106 [b]). To effectuate the conversion, the Authority must certify to HUD that the rent sought is reasonable in relation to rents being charged for comparable units in the private, unassisted market and is not in excess of the rents for comparable unassisted units (see 24 CFR 882.106 [b] [1] [i], [ii]).
The applicable regulation also enunciates a comparison test for rent-controlled units. 24 CFR 882.106 (b) (2) states: “For a rent controlled unit, comparable units shall be those which are rent controlled; for a unit which is not subject to rent control, comparable units shall be those which are not rent controlled.”
Additionally, the regulation provides that the rental be subject to a maximum fair market rent limitation which is a maximum gross figure that cannot exceed the average rent currently charged for a unit of similar size and type in the applicable municipality or county.* Thus, the regulation provides that rentals be determined on a comparative basis to units in the private market with the fair market rent limitation imposed as the upper maximum rental unless special circumstances prevail. (See 24 CFR 882.106 [a] [l]-[4].)
Petitioner’s argument turns upon a construction of the “rent reasonableness limitation.” Because 24 CFR 882.106 omits any specific reference to apartments subject to the Rent Stabilization Law (Administrative Code of City of New York, § YY51-2.0 et seq.), petitioner ingeniously argues that the drafters specifically excluded such apart *846 ments and that petitioner’s units have only the maximum ceiling imposed by the fair market rent limitation of decontrolled units.
Respondent Authority contends that the fair market rent for the apartments can be no more than the rent-stabilized figures. To support this contention, the Authority has submitted an opinion letter from the Regional Counsel of the United States Department of Housing and Urban Development which states in part that: “[I]n a rent controlled unit, comparable units shall be those which are rent controlled. This means that in an apartment building were [sic] the unit rents are subject to the Rent Stabilization Law, the leased unit gross rents cannot exceed the amount set by the Rent Stabilization Board. The stabilized rent, therefore, is the fair market rent under 2U CFR 882.106, and the Authority’s liability under the lease for rent should be limited to the stabilized rent.” (Emphasis supplied.)
Petitioner contends that the opinion is self-serving and cannot be cited as authority for the Authority’s position. The United States Supreme Court disagreed with petitioner in Udall v Tollman (380 US 1,16). Mr. Chief Justice Warren stated: “When faced with a problem of statutory construction, the Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. * * * When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.”
Therefore, when the court must interpret an administrative regulation, “the ultimate criterion is the administrative interpretation which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.” (Bowles v Seminole Rock Co., 325 US 410, 413-414; see, also, Traficante v Metropolitan Life Ins., 409 US 205,210.)
There is no indication that the opinion letter is erroneous or inconsistent with the regulation.
Section 8 is a Federal program administered nationwide. That Federal regulations promulgated to administer a Federal program must have uniform, national application unless stated otherwise in the regulation is uncontroverted. Therefore, the regulations speak in general terms of a com *847 parison to private unassisted housing, whether the units used for comparision are decontrolled ór subject to a State or local ordinance placing statutory limits on the rent to be charged. Thus, respondent is correct in its view that the mention of “rent control” in 24 CFR 882.106 (b) (2) speaks to rent control in its broadest, generic sense and would, in the present case, encompass the Rent Stabilization Law of the City of New York. Under any other interpretation, an unjust result would obtain.
Petitioner’s reading of the regulation would give him higher rentals for his section 8 tenants than for the unassisted tenants in the building who are subject to rent stabilization. Section 8, however, was not promulgated to reward landlords for simply participating in the program. Thus, granting petitioner the fair market rent is tantamount to substituting the beneficiaries of the section 8 program from low-income families to the landlords.
More incongruously, petitioner’s reading would allow any landlord participating in section 8 to circumvent the rent stabilization controls existing in New York City. By carving out a special exception for landlords of this city where many apartments housing section 8 tenants are subject to a local ordinance such as rent stabilization, the attendant increase in rental payments for which the Federal Government would be responsible would be enormous. And, by parity of reasoning, if this exception was adopted in other municipalities subject to a local ordinance regulating rentals charged, but not labeled specifically as “rent control”, the added monetary burden on the Federal Government would be nothing less than staggering. Certainly, Congress could not have intended landlords to receive added compensation simply for renting modest, nonluxury apartments to economically less fortunate citizens just because the applicable regulation does not specifically mention the Rent Stabilization Law of the City of New York.
Accordingly, this court holds that the respondent Authority execute one-year, section 8 leases, nunc pro tune, as of October 1, 1979, with petitioner at the appropriate rent.
For the period after October 1, 1980, the parties are left to draw new section 8 leases at the presently existing rent- *848 stabilized figures. If no agreement can be reached, the parties may pursue their respective legal remedies.
Settle order and judgment for amount now due to petitioner for period from October 1, 1979 through September 30,1980.

 Fair market rent is defined in 24 CFR 882.102 as: “[t]he rent, including utilities (except telephone), ranges and refrigerators, and all maintenance, management, and other services, which, as determined at least annually by HUD, would be required to be paid in order to obtain privately owned, existing, Decent, Safe, and Sanitary rental housing of modest (non-luxury) nature with suitable amenities. Separate Fair Market Rents shall be established for dwelling units of varying sizes (number of bedrooms) and types (e.g. elevator, non-elevator).”