OPINION OF THE COURT
Fuchsberg, J.
In this habeas corpus proceeding, brought by a prisoner to secure his return to parole status, we are called upon to decide whether, under the circumstances presented, the timing and notification of the decision in relator’s final parole revocation hearing accorded acceptably with New York’s regulatory scheme and the strictures of due process.
The issue presents itself in the following factual context:
Relator, Preston Knowles, was sentenced to an indeterminate prison term of 15 years maximum and 5 years minimum following his conviction of robbery in the first degree and sexual abuse in the third degree. The sentence was carried out at Attica Correctional Facility, from which, in due time, he was released to parole supervision. Thereafter, upon violation of the conditions on which the parole was granted, he was returned to prison to continue service of his sentence. Enough time having elapsed, he once again became eligible for parole consideration and, indeed, was restored to parole status. However, only months passed *262 when he was arrested anew, this time on charges of unlawful imprisonment. As a consequence, a parole violation warrant issued and was lodged against him. At- the preliminary parole revocation hearing which was promptly afforded to relator, and at which he was represented by counsel, probable cause was found that he had violated his parole.
Though Knowles then became entitled to a final revocation hearing, he asked for and was granted an adjournment until disposition of the pending criminal charges, in satisfaction of which he eventually elected to plead guilty to the crime of attempted assault. When he thereupon informed the appropriate officials that he was ready for his final revocation hearing to proceed, it was scheduled for and completed on September 20, 1979. No issue is raised as to its timeliness. At its conclusion, the hearing officer estimated that he expected to be able to make his decision in three to four weeks.
At this point in our chronology, it may be well to note that the decision-rendering process which follows a final revocation hearing is not without legislative and regulatory oversight.
Thus, section 259-d of the Executive Law, provides: “A hearing officer conducting such proceeding shall be required to make a written report and a recommendation to the state board of parole. Such recommendation shall thereafter be approved, disapproved or modified by a member or members of the state board of parole in accordance with rules adopted by the board.” And, section 259-i (subd 3, par [f], cl [xi]) of the Executive Law further provides: “If the presiding officer sustains any violations, he must prepare a written statement, to be made available to the alleged violator and his counsel, indicating the evidence relied upon and the reasons for revoking or recommending the revocation of parole, and for the disposition made or recommended”. (Emphasis added.) Finally, 9 NYCRR 8005.20(f) reads: “Notification. As soon as practicable after a violation hearing, the alleged violator a^id his attorney shall be advised in writing of the violation hearing decision, or decision and recommendation, including the reason for the determination and the evidence relied upon.” (Emphasis added.)
*263 These provisions in mind, the record tells us that the first formal notification of the decision took place 41 days after the hearing. In the form of a letter dated November 1 from the Division of Parole, initially it went solely to the attorney for the defendant. While the defendant admits that a copy forwarded to him by the lawyer arrived on November 9, he alleges that the copy of the “Finding of Fact and Recommended Disposition” which the letter recited had been enclosed was not included. Further, while the letter, now some 50 days posthearing, informed its reader that Knowles’ parole had been revoked and that he had been declared ineligible for parole re-release consideration for 15 months, absent the “finding of fact”, it did not state “the reason for the determination” or “the evidence relied upon”, both called for by the Executive Law and the afore-mentioned regulation.
It was against this background and an alleged lack of further information, that, on December 10, 1979, on relator’s pro se application, a writ of habeas corpus issued out of Supreme Court, Wyoming County, against the Attica superintendent to whose charge Knowles by then had been returned. Remarking that the letter to the lawyer, as far as it went, was not the notification to “the alleged parole violator” required by 9 NYCRR 8005.20 (f), and that, by then, the 3 to 4 weeks in which to receive a decision, as predicted by the hearing officer, had already become 11, Knowles alleged a denial of due process and a deprivation of the rights “provided by section 259 of the Executive Law”. He sought as a remedy the annulling of the parole revocation determination and a restoration to parole. Respondent’s return tendered no excuse or justification for the delay. It was while the habeas corpus proceeding was pending before Special Term, that, on December 19, Knowles for the first time personally received a copy of the decisional material from Attica’s institutional parole officer.
On January 23, Supreme Court, finding that, in the absence of any showing of prejudice, “notification of the final determination * * * after a period of three months * * * was not so inordinate as to fall outside the statutory scheme”, dismissed the writ. On, appeal, for its part, the *264 Appellate Division, Fourth Department, one Justice dissenting, affirmed, essentially for the reasons stated by Special Term. On the ensuing rationale, there should be an affirmance.
We begin our analysis with the reminder that, though a parolee’s liberty is a conditional one, it is a “valuable” liberty and, as such, it is within the protection of the Fourteenth Amendment (Morrissey v Brewer, 408 US 471, 480-482). So saying, the United States Supreme Court, though it refrained from “writ[ing] a code of procedure”— a task it believed better left to each State — did not hestitate to explicitly indicate that any such “code” must see to it that, inter alia, the revocation hearing “be tendered within a reasonable time” and that “a written statement by the factfinders as to the evidence relied on and reasons for revoking parole” be provided (Morrissey, supra, at pp 488-489). Nor did this impose on our own jurisprudential thinking, for considerably in advance of Morrissey’s pronouncements came our own declaration that parole revocation “ ‘involves a deprivation of liberty just as much as did the original criminal action and * * * falls within the due process provision of section 6 of article 1 of our State Constitution’ ” (People ex rel. Menechino v Warden, Green Haven State Prison, 27 NY2d 376, 382).
Ever since, concordantly, our statutory and administrative legislation has manifested concern for promptness and for accountability. Thus, it directs that a preliminary revocation hearing be afforded a parolee within 15 days after a warrant for retaking and temporary detention has been executed (Executive Law, § 259-i, subd 3, par [c], cl [i]). So, too, a final revocation hearing must be made available within 90 days of the probable cause determination (Executive Law, § 259-i, subd 3, par [f], cl [i]). And, recognizing the spirit of these provisions, we have held that failure to afford these rights in timely fashion will bring vacatur of the warrant and restoration to parole (see People ex rel. Levy v Dalsheim, 48 NY2d 1019, affg 66 AD2d 827).
Pursuing the same track, 9 NYCRR 8005.20 (f) mandates notification of a revocation hearing decision “as soon *265 as practicable”. Since it does not further define this phrase, it seems to us that the word “practicable” puts emphasis on the need to respond to the realties of everyday administration, albeit with continuing alertness to the over-all goal that the notification be accomplished promptly. To test whether that has been done, each case, of course, must be judged on its own facts. It therefore would be foolhardy to attempt now to spell out how varied circumstances and contingencies are to be weighed in determining whether notification was sent “as soon as practicable”.
But it hardly needs saying that these almost always will include, for instance, the complexity and length of a case, since either factor usually will affect the duration of the decisional process. The extent of the delay, of course, is always to be weighed in the balance. So, too, are the validity of the explanations offered, for they may excuse what otherwise would appear to be too long a period. In the end, the test must be practical necessity.
Moreover, because a due process right is grounded on principles more fundamental than estoppel, it is not necessary to demonstrate prejudice to invoke the constitutional protection (cf. People ex rel. Gonzales v Dalsheim, 52 NY2d 9, 14, n 2). Needless to say, for a parolee whose continued liberty is conditional and may be ended by an alleged parole violation, apprehension over delay in handing down the awaited decision will be no small matter (see Morrissey v Brewer, supra, at p 482). This is not to say, however, though actual prejudice is not essential to due process, when the claim is one premised on a statute or regulation alone, its presence should be ignored.*
These considerations in mind, it cannot be said as a matter of law that the initial written notification of the decision, when sent to the relator’s counsel on November 1, did not occur “as soon as practicable”. A fortiori, it met the more elastic reasonable time standard of due process. *266 True, the formal revocation hearing was short, being concluded in one day. But, while the plea to the criminal conduct which triggered the issuance of the parole revocation warrant may have simplified the primary issue, responsibility for fixing the appropriate period of time for which Knowles would have to be imprisoned before he again could be considered for parole still remained.
Moreover, in the end, the decision and supportive rationale had to be the work products of both the hearing officer and a parole commissioner, the latter’s review mandated by sections 259-d and 259-i (subd 3, par [f], cl [x]) of the Executive Law. There is nothing stereotyped about the adjudicative tasks on which first the hearing officer and then the commissioner had to embark. As in all such cases, Knowles was required to receive highly individualized attention. Yet, as the record shows, the commissioner completed his review by October 26. Since by this date he would have had to study the minutes, digest the file and dissect the hearing officer’s report and proposed decision, it must be assumed that the hearing officer’s report had reached him earlier that month, which conformed to the estimate the officer himself had given at the conclusion of the hearing. It was with equal expedition that the commissioner, once he completed his work, took only five calendar days, inclusive of an intervening Saturday and Sunday, to finalize the decision, prepare the formal notification and dispatch it to counsel.
We turn now to the relator’s complaint that the Division of Parole did not send written notification of the decision and the basis on which it was arrived to him personally until some six weeks after his lawyer had received it and then only after the writ of habeas corpus had issued. In that regard, we note, first and foremost, that it is notification, not personal notification, that is a requirement of due process. Neither our case law, nor, for that matter, Morrissey, suggests differently. Absent legislation to the contrary, therefore, the general rule is that when a litigant appears by an attorney, notice to the attorney will serve as notice to the client.
In this case, the pertinent statutory provision does not *267 provide otherwise. As we have seen, section 259-i (subd 3, par [f], cl [xi]) of the Executive Law, while it speaks of a written statement, requires no more than that it “be made available” to the alleged violator and his counsel. In legal parlance, the statement would be “available” if, as here, it was transmitted to counsel of record in the matter to which it pertains. It may also be observed that as-of-course availability of copies of statements and of decisions at the request of parolees or to their counsel is unquestioned.
It is instructive, too, and the evidence is unchallenged that, according to the letter of notification which went to relator’s counsel, a copy of the statement was enclosed. True, Knowles, as relator, asserted, without contradiction, that the copy of the letter promptly forwarded to him by counsel did not contain the enclosure. While this was some proof that the copy Knowles received did not include the statement, it does not constitute proof that the original one transmitted by the board to counsel did not. Furthermore, it is of more than passing interest that Knowles, who appeared pro se in the habeas corpus proceeding, neither called counsel as a witness, nor accounted for his absence. He also did not indicate that he had ever inquired of counsel as to the latter’s receipt of the enclosures or, if he had, that he had requested that a copy be forwarded to him. Nor is there any showing of a prewrit demand made directly to the board.
Finally, we come to 9 NYCRR 8005.20 (f). This regulation, presumably adopted by the board in implementation of the statutory scheme it is empowered to enforce, is to be read, if possible, in a manner consistent with, rather than in opposition to, the governing statute (see 2 NY Jur 2d, Administrative Law, § 105; McKinney’s Cons Laws of NY, Book 1, Statutes, § 98). It is also a recognized principle of administrative law that great weight is to be given to an administrative agency’s interpretation of its own regulations (see Matter of Harbolic v Berger, 43 NY2d 102, 109). Applying these interpretive tools, we find that, though the regulation and statute differ semantically in some respects, in their delineation of a policy favoring explicit and accountable decision-making, they speak as one *268 voice in their requirement that decisions and the rationale behind them be in writing.
Presenting a contrast, the language of the statute and the regulation, as they bear on whether personal notification is required — “made available to the alleged violator” versus “alleged violator * * * shall be advised” — are best resolved, it seems to us, by reading the regulation as an announcement, for internal guidance, of a preferred norm for giving notice, which, when otherwise provided in conformity with the statute and due process, as it was in the present case, will not, in and by itself, mandate automatic dismissal of parole violation charges and an automatic restoration to parole status (compare Beattie v New York State Bd. of Parole, 47 AD2d 656, affd 39 NY2d 445, with People ex rel. Levy v Dalsheim, 66 AD2d 827, affd 48 NY2d 1019, supra). This is true in the present case, where the petitioner, having received the copy of the division’s letter forwarded by his counsel, in fact had timely notice of the outcome of the revocation hearing so that his ability to request the detailed report and prepare an application for relief was not unduly curtailed.
For all these reasons, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler and Meyer concur with Judge Fuchsberg; Judge Jones concurs in result only.
Order affirmed.

 Among factors which may contribute to prejudice a parolee are the four noted by Justice Schnepp in his dissenting opinion below: “ (a) absolute loss of freedom; (b) loss of rehabilitation opportunity; (c) loss of available privileges; and (d) delay or effective loss of right to appeal” (78 AD2d, at p 976; cf. People v Taranovich, 37 NY2d 442, 446-447).