[628 NYS2d 712]

In the Matter of ARTHUR T. MOTT, Appellant, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent.

Second Department, May 22, 1995

## APPEARANCES OF COUNSEL

*Geoffrey T. Mott,* Hempstead, for appellant.

*Dennis B. Hasher,* Bronx *(Lawrence Alexander* and *Dennis J. Saffran* of counsel), for respondent.

## OPINION OF THE COURT

GOLDSTEIN, J.

At issue here is whether rents subsidized under 42 USC § 1437f (section 8 of the United States Housing Act of 1937, as amended) are subject to regulation under the Emergency Tenant Protection Act of 1974 (hereinafter the ETPA [McKinney's Uncons Laws of NY § 8621 *et seq.;* L 1974, ch 576, § 4, as amended]). We hold that, barring certain exceptions not applicable here, such rents are subject to regulation under the ETPA.

### 1. Facts

On March 1, 1987, the tenant signed a lease with the petitioner landlord for the subject apartment at a rent of $600 per month. On March 2, 1987, the landlord and the tenant executed an addendum to the lease, which provided: "The Landlord will enter into a Housing Assistance Payments Contract ('Contract') with a Public Housing Agency (PHA) under the Section 8 Existing Housing Program of the U.S. Department of Housing and Urban Development. Under the contract the PHA will make housing assistance payments to the Landlord to assist the Family of which the Tenant is the representative".

The public housing agency involved in this case is the Nassau County Office of Housing and Intergovernmental Af-

fairs, which entered into a "section 8" contract with the landlord and the tenant setting the rent at $508 per month, with the tenant's share being $323 per month. However, the rent-stabilized rent for the apartment plus additional rent for storage space and a parking space leased by the tenant was $404.61.

On March 16, 1987, the tenant filed a rent overcharge complaint with the New York State Division of Housing and Community Renewal (hereinafter the DHCR) alleging that other tenants in the building were paying $400 per month or less for their apartments. The landlord responded that "[t]enant receives Section 8 Assistance and therefore is not subject to E.T.P.A.".

The administrator of the section 8 program from the Nassau County Office of Housing and Intergovernmental Affairs, in response to an inquiry from the DHCR, stated: "The Section 8 contracts that were executed with the owner and tenant were approved for a rent of $508.00 per month, based on the owner's written request. This office has no way of determining if the rent requested by an owner is the legal rent approved for rent stabilization. This is the responsibility of the owner".

The DHCR disagreed with the landlord, and held that the legal rent for the apartment, parking, and storage space was $404.61. Under the section 8 program, the tenant's share of the rent remained $323 per month. Therefore, the landlord was directed to return the amount overcharged to the section 8 program administered by the Nassau County Office of Housing and Intergovernmental Affairs. That determination was affirmed by the DHCR on administrative appeal.

The landlord commenced the instant proceeding to review the determination of the DHCR. In his petition, the landlord noted that on August 22, 1985, a District Rent Administrator determined, with respect to another building owned by him, that "[t]his Division has no jurisdiction over tenants who are in the Section 8 program". The landlord further contended that pursuant to 24 CFR 882.106 (b) (1) (i), the section 8 program was given the sole authority to determine rents, because "federal law has pre-empted state regulation".

The Supreme Court, Nassau County, rejected the landlord's arguments, citing *Wiener v New York City Hous. Auth.* (106 Misc 2d 843). The *Wiener* decision held that 24 CFR 882.106 did not preempt State rent regulation, based upon a letter

from the Regional Counsel of the United States Department of Housing and Urban Development (hereinafter HUD), which stated: " *'The stabilized rent * * * is the fair market rent under 24 CFR 882.106,* and the [New York City Housing] Authority's liability under the lease for rent should be limited to the stabilized rent.' (Emphasis supplied.)" *(Wiener v New York City Hous. Auth., supra,* at 846.)

2. Relevant Statutory Provisions

Section 8 housing refers to several Federal programs to aid low-income housing under the United States Housing Act of 1937, as amended *(see,* 42 USC § 1437 *et seq.),* which must be distinguished from the National Housing Act of 1934, as amended *(see,* 12 USC § 1701 *et seq.;* Sen Rep No. 93-693, 93rd Cong, 2nd Sess, reprinted in 1974 US Code Cong & Admin News 4273). The "section 8" housing at issue here is rental assistance to tenants of existing housing *(see,* 42 USC § 1437f), which must be distinguished from other "section 8" programs, which *inter alia,* provide direct loans to public housing agencies to finance the "development, acquisition, or operation of low-income housing projects" (42 USC § 1437b [a]).

ETPA § 5 (McKinney's Uncons Laws of NY § 8625) and the regulations promulgated thereunder (9 NYCRR 2500.9) make rent-stabilization regulations applicable to

"all or any class or classes of housing accommodations in a city, town or village for which a declaration of emergency has been made except the following * * *

"(b) housing accommodations owned or operated by the United States, the State of New York, any political subdivision, agency or instrumentality thereof, any municipality or any public housing authority;

"(c) housing accommodations in buildings in which rentals are fixed by or subject to the supervision of the State Division of Housing and Community Renewal under other provisions of law or the New York State Urban Development Corporation, or, to the extent that regulation under this act is inconsistent therewith aided by government insurance under any provision of the National Housing Act" (9 NYCRR 2500.9 [b], [c]).

In *Axelrod v Starr* (52 AD2d 232, 237, *affd* 41 NY2d 942 *on opn of Silverman, J., at App Div)* the Appellate Division, First Department, interpreting these provisions, held that certain buildings allegedly encumbered by Federally insured mortgages assigned to Federal agencies were subject to rent-stabilization regulations, since, under the ETPA, "housing accommo-

dations financed by loans from public agencies are subject to the Rent Stabilization Law" *(see also, Stoneridge Apts., Co. v Lindsay,* 303 F Supp 677). Housing owned or operated by a public housing agency with "section 8" funds would be exempt from rent stabilization under 9 NYCRR 2500.9 (b) *(see, Sidberry v Koch,* 539 F Supp 413). However, there is no provision of the ETPA or regulations promulgated thereunder which exempts rents subsidized under section 8 from rent-stabilization regulations *(see, Matter of Fishel v New York City Conciliation & Appeals Bd.,* 123 Misc 2d 841; *Tann Realty Co. v Thompson,* 112 Misc 2d 392).

3. Federal Preemption

In determining whether a State Law is invalid under the doctrine of Federal preemption, the first line of inquiry is whether the Federal law involved contains an express preemption provision *(see, Building & Constr. Trades Council v Associated Bldrs. & Contrs.,* 507 US —, —, 113 S Ct 1190, 1194). If it does not, one must look to whether the State law "conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States" *(Malone v White Motor Corp.,* 435 US 497, 504). A State law can also be invalid if it " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the federal law" *(Livadas v Bradshaw,* 512 US —, —, 114 S Ct 2068, 2076, quoting *Brown v Hotel Empls.,* 468 US 491, 501).

24 CFR part 246 (formerly 24 CFR part 403; *see,* 49 Fed Reg 6712) sets forth specific rules with respect to Federal preemption of State rent regulation.[1] Under 24 CFR part 246 (subpart B) a landlord of a building with a mortgage insured or held by HUD under the National Housing Act of 1934, as amended, may make a "preemption request" to HUD (24 CFR part 246, subpart B). If it is determined that the rents permitted by the "local rent control board" (24 CFR 246.1 [a]) do not provide the landlord with the "income level" necessary to maintain the project (24 CFR 246.10 [b]), the authority of the "local rent control board" to control rents will be preempted (24 CFR 246.10 [b]). However, where there has been no determination that preemption is necessary to provide the landlord with

---

1. Unlike its predecessor, 24 CFR former part 403, the preemption of 24 CFR 246.1 *et seq.* "is limited to the regulation of rents" *(Fairview Co. v Idowu,* 148 Misc 2d 17, 21).

adequate income, there is no preemption, and rent-stabilization regulations would apply to rents *(see, Sokol Apts. v Berlenghi,* 71 AD2d 622; *Sky View Hous. Assocs. v Arasin,* 113 Misc 2d 812; *Bianchi v Ganz,* 82 Misc 2d 478; *Matter of Pelham Towers v Conciliation & Appeals Bd.,* 71 Misc 2d 814).

Pursuant to 24 CFR part 246 (subpart C), if the property is subject to a mortgage insured or held by HUD *and* the landlord receives section 8 housing assistance for the apartment, the regulations provide that HUD has preempted "the entire field of rent regulation by local rent control boards" in order to "minimize defaults by the mortgagor" (24 CFR 246.21). In that case, the rent is not governed by rent-stabilization regulations *(see, City of Boston v Harris,* 619 F2d 87; *City of Boston v Hills,* 420 F Supp 1291, 1298; *Pleasant E. Assocs. v Cabrera,* 125 Misc 2d 877; *Axelrod v Various Tenants of Delano Vil.,* 123 Misc 2d 922; 51 Fed Reg 20264, 20265, 20269; *but see, Dick v Strachan,* 136 Misc 2d 79 [which found Federal preemption based upon *Axelrod v Various Tenants of Delano Vil., supra,* and *Pleasant E. Assocs. v Cabrera, supra,* without stating that the building in question was subject to a mortgage held or insured by HUD]).

In this case, the landlord does not claim that HUD is the insurer or holder of a mortgage on the property. Thus, 24 CFR part 246 does not apply here. In support of his contention that the rent on the subject apartment is not subject to rent-stabilization laws, the landlord has turned to 24 CFR 882.106, which regulates rents for apartments receiving section 8 subsidies.

This regulation contains no express preemption provision. Further, the section 8 "legislative scheme is not all encompassing" *(Morrisania II Assocs. v Harvey,* 139 Misc 2d 651, 658). Thus, it cannot be said that Congress intended to preempt the entire area of rent regulation with respect to section 8 housing *(see generally, Helmsley v Borough of Fort Lee,* 362 F Supp 581, 589-590; *Stoneridge Apts., Co. v Lindsay,* 303 F Supp 677, *supra; Choy v Farragut Gardens,* 131 F Supp 609). In order to find that Federal law preempts State regulation of rents here, the State regulation must conflict with the Federal law, or frustrate the Federal regulatory scheme *(see, Malone v White Motor Corp.,* 435 US 497, 504, *supra; Morrisania II Assocs. v Harvey, supra,* at 659).

24 CFR 882.106 provides that rent for existing housing units *"shall not exceed* the Fair Market Rent" established by HUD

(24 CFR 882.106 [a] (1]; emphasis supplied). The regulation permits the local public housing agency to approve rents that exceed the Fair Market Rents by up to 10% *(see, Hackett v Housing Auth.,* 750 F2d 1308, 1310, *cert denied* 474 US 850). If a local public housing agency seeks to approve such rents for more than 20% of the housing units in the program, it must get HUD's approval (24 CFR 882.106 [a] [2]). HUD may approve even higher rents of up to 20% above the Fair Market Rents but only upon request of a local public housing agency, based upon "special circumstances warranting such increase in maximum Gross Rents" (24 CFR 882.106 [a] [3]). With respect to each unit for which it approves a lease, the public housing agency must follow the following *"Rent reasonableness limitation"* (24 CFR 882.106 [b]):

"(b) *Rent reasonableness limitation.* (1) The PHA [public housing agency] shall certify for each unit for which it approves a lease that the Contract Rent for such unit is:

"(i) Reasonable in relation to rents currently being charged for comparable units in the private unassisted market, taking into account the location, size, type, quality, amenities, facilities and management and maintenance service of such unit, and

"(ii) Not in excess of rents currently being charged by the Owner for comparable unassisted units.

"(2) For an assisted unit that is subject to local rent control, comparable units are rent controlled units. However, for an assisted unit that is not subject to local rent control while it is assisted (regardless of whether the unit would be subject to such control if it were not assisted), comparable units are units that are not subject to local rent control".[2]

From the language of these provisions, which set a *"Rent reasonableness limitation"* and state that, unless certain exceptions apply, rent *"shall not exceed* the Fair Market Rent" (emphasis supplied), their apparent purpose is to limit section 8 subsidies by setting maximum rents *(see generally, Cisneros v Alpine Ridge Group,* 508 US —, 113 S Ct 1898). Exempting all section 8 housing from rent regulation would have the opposite effect. As the court noted in *Morrisania II Assocs. v Harvey* (139 Misc 2d 651, 659, *supra):* "To permit an owner to

2. In 1987, when these proceedings commenced, 24 CFR 882.106 (b) (2) read as follows: "For a rent controlled unit, comparable units shall be those which are rent controlled: for a unit which is not subject to rent control, comparable units shall be those which are not rent controlled".

increase a subsidized tenant's share of the rent beyond the legal limit would subvert the very purpose of the Federal law: Rent subsidies are intended to decrease the tenant's rent, not to increase the landlord's return".

Further, as was noted in *Wiener v New York City Hous. Auth.* (106 Misc 2d 843, 846, *supra),* this interpretation is contrary to the interpretation of HUD's Regional Counsel, that " *'[t]he stabilized rent * * * is the fair market rent under 24 CFR 882.106'* ". It is well settled that "great weight is to be given to an administrative agency's interpretation of its own regulations" *(People ex rel. Knowles v Smith,* 54 NY2d 259, 267; *Matter of Carlson Assocs. v Jorling,* 204 AD2d 540, 541; *Matter of James H. Rambo, Inc. v Jorling,* 177 AD2d 577, 578; *Matter of Lipes v State of N. Y. Div. of Hous. & Community Renewal, Off. of Rent Admin.,* 174 AD2d 571, 572).

4. Other Arguments

The landlord notes that a District Rent Administrator held, with respect to another building owned by him, that it had "no jurisdiction over tenants who are in the section 8 program". However, the DHCR disavows that determination. Further, since there was no administrative appeal taken from that order, the Commissioner of the DHCR had no opportunity to review it. In any event, the determination dealt with another building, and is in no way binding here.

We further note that the papers submitted upon the landlord's motion for reargument, which was denied by order of the Supreme Court, Nassau County, dated November 30, 1993, are not properly before this Court *(see, Schulman v City of New York,* 190 AD2d 663).

The appellant's remaining contentions are without merit.

5. Conclusion

The DHCR properly determined that the legal rent for the subject apartment was the rent-stabilized rent. Accordingly, the judgment which dismissed the proceeding to review that determination is affirmed.

SULLIVAN, J. P., O'BRIEN and RITTER, JJ., concur.

Ordered that the judgment is affirmed, with costs.